IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN ROE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:21-cv-00125-JPG |
| ) | |
| MARVIN RICHARDSON, in his official ) | |
| capacity as acting director of the Bureau of ) | |
| Alcohol, Tobacco, Firearms and Explosives, ) | |
| and MERRICK GARLAND, in his official ) | |
| capacity as Attorney General of the United ) | |
| States, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

## I.   Introduction

This matter comes before the Court on Defendants' Marvin Richardson and Merrick Garland,[1] (collectively, "Defendants") Motion to Dismiss Plaintiff John Roe's ("Roe" or "Plaintiff") Complaint (Doc. 21). Plaintiff responded to Defendants' Motion to Dismiss (Doc. 24).

## II.   Procedural Background

Plaintiff filed his Complaint in this Court on February 3, 2021 (Doc. 1). Plaintiff seeks declaratory relief to a series of questions he posed regarding drop-in auto sear ("DIAS") that Plaintiff allegedly purchased around 1979 (Doc. 1 ¶ 4). Specifically, Plaintiff alleges that Defendants violated the Administrative Procedure Act ("APA") Notice-and-Comment Requirements (Doc. 1 at ¶¶ 56-65). Plaintiff argues the questions contained in paragraph 68 of his Complaint require adjudicating (Doc. 1 at ¶ 68). Additionally, Plaintiff alleges this Court has

---

[1]   Pursuant to Fed. R. Civ. P. 25(d) Marvin Richardson and Merrick Garland are substituted for former Acting Director Regina Lombardo and Acting Attorney General Jeffrey Rosen.

subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Federal Declaratory Judgment Act under 28 U.S.C. § 2201(a). (Doc. 1 at ¶ 71).

Defendants move to dismiss Plaintiff's Complaint for "lack of subject matter jurisdiction, lack of standing, and failure to state a claim upon which relief can be granted." (Doc. 21).

### III.     Factual and Statutory Background

Plaintiff alleges he lawfully purchased a DIAS in the Southern District of Illinois around 1979 (Doc. 1 at ¶ 4). "On a firearm, a sear is the part of the trigger mechanism that holds the hammer back until the correct amount of pressure has been applied to the trigger." (Doc. 21, p. 2). According to Plaintiff, a DIAS is an "aftermarket part…that would…make some, but not all, otherwise semi-automatic AR15 rifles…fire as a "machinegun" as that term was defined in 28 U.S.C. § 5845(b) …" (Doc. 1 at ¶ 5). Two weeks after Plaintiff purchased the DIAS, Plaintiff contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to inquire as to the legality of the DIAS and was told the DIAS were lawful (Doc. 1 at ¶¶ 14, 16). ATF allegedly told Plaintiff the following:

> …the DIAS by itself, was not prohibited or subject to the registration requirements of the National Firearms Act, as long as Plaintiff did not own compatible AR15 and M16 trigger parts, which Plaintiff did not possess, but that if Plaintiff were to acquire an AR15 or M16 parts, it was suggested that possession of both the auto sear and the AR15 and/or M16 parts might not be legal, if the group of items was not registered with ATF.

(Doc. 1 at ¶ 16).

In 1934, the National Firearms Act ("NFA") was enacted to target lethal weapons; imposing a tax on making and transferring firearms defined in the Act and requiring registration of these firearms.[2] 26 U.S.C. § 5845. The NFA defines a firearm to include a machinegun. *See*

---

[2]     National Firearms Act, https://www.atf.gov/rules-and-regulations/national-firearms-act (last visited January 5, 2022).

26 U.S.C. § 5845(a)(6). The NFA further defines a machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

In 1981, the ATF published Revenue Ruling 81-4 ("Ruling 81-4") regarding DIAS. This ruling determined that DIAS manufactured after October 31, 1981 are considered machineguns and are therefore, regulated under the NFA. The entirety of the ruling is reproduced below.

> The Bureau of Alcohol, Tobacco and Firearms has examined an auto sear known by various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," which consists of a sear mounting body, sear, return spring, and pivot pin. The Bureau finds that the single addition of this auto sear to certain AR15 type semiautomatic rifles, manufactured with M16 internal components already installed, will convert such rifles into machineguns.
>
> The National Firearms Act, 26 U.S.C. 5845(b), defines "machinegun" to include any combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.
>
> HELD: The auto sear known by various trade names including "AR15 Auto Sear," "Drop In Auto Sear," and "Auto Sear II," is a combination of parts designed and intended for use in converting a weapon to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. Consequently, the auto sear is a +machinegun as defined by 26 U.S.C. 5845(b).
>
> With respect to the machinegun classification of the auto sear under the National Firearms Act, pursuant to 26 U.S.C. 7805(b), this ruling will not be applied to auto sears manufactured before November 1, 1981. Accordingly, auto sears manufactured on or after November 1, 1981, will be subject to all the provisions of the National Firearms Act and 27 C.F.R. Part 179.

ATF Rul. 81–4, [ATFQB 1981-3 78] (1981).

In 1986, the Title II of the Gun Control Act of the NFA ("Gun Control Act") was enacted and amended the NFA to ban machineguns. 18 U.S.C. § 921(a)(23). Pursuant to 18 U.S.C. § 922(o), machineguns manufactured on or after May 19, 1986, may be only transferred or

possessed by law enforcement, effectively banning private ownership of machineguns.[3]

In 2014, the ATF published an editor's note to Ruling 81-4 in the Federal Firearms Reference Guide ("Editor's Note"), which explained that unregistered DIAS, regardless of when it was manufactured, is illegal (Doc. 1 at ¶ 56). Specifically, the Editor's Note states as follows:

> Regardless of the date of manufacture of a drop in auto sear (i.e., before or after November 1, 1981) the possession or transfer of an unregistered drop in auto sear (a machinegun as defined) is prohibited by the National Firearms Act (NFA), 26 U.S.C. § 5861, and the Gun Control Act, 18 U.S.C. § 922(o). The last paragraph of ATF Ruling 81-4 only exempts the making, transfer, and special (occupational) taxes imposed by the NFA with respect to the making, manufacture, or transfer of drop in auto sears prior to November 1, 1981. See 26 U.S.C. §§ 5801, 5811, 5821, 7805(b)(8).

U.S. Dep't of Just. ATF, Fed. Firearms Reg. Reference Guide, p. 126-27 (1988).

Plaintiff allegedly forgot about his DIAS until 2020 when he wanted to legally sell the DIAS. (Doc. 1 at ¶ 27). Plaintiff states that it would have been "an utterly futile act" to try to file an ATF Form 4[4] "because the ATF would summarily disapprove the Form 4, refund the $200.00 transfer tax, and refuse to register the auto sear to the buyer, whoever it might be, as the auto sear is not registered." (Doc. 1 at ¶ 31). Specifically, under the NFA, firearms can only be transferred when the Attorney General has approved the transfer and registration. 26 U.S.C. § 5812(b). No other provisions allow for transfer of firearms. The NFA makes it unlawful for "any person" to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).

---

[3] Section 922(o) states "(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun. (2) This subsection does not apply with respect to-- (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect." 18 U.S.C. § 922(o).

[4] According to the ATF, Form 4 is a form to transfer a NFA firearm to an individual or other entity. When this form is approved, it is returned to the ATF with a tax stamp. Form 4 – Application for Tax Paid Transfer and Registration of Firearm (ATF Form 5320.4), https://www.atf.gov/firearms/docs/form/form-4-application-tax-paid-transfer-and-registration-firearm-atf-form-53204 (last visited January 5, 2022).

The crux of Plaintiff's Complaint is that he believes pursuant to Ruling 81-4, Plaintiff can legally continue to possess his DIAS while, on the other hand, the ATF and DOJ state that Plaintiff cannot legally do so (Doc. 1 at ¶ 66(B)). This leaves Plaintiff with a "conundrum" regarding conflicting laws (Doc. 1 at ¶ 66). Defendants move to dismiss for lack of subject matter jurisdiction, lack of standing, and failure to state a claim upon which relief can be granted.

IV.    **Law and Analysis**

    a.  **Subject Matter Jurisdiction**

Defendants move to dismiss on the basis that this Court does not have subject matter jurisdiction over Plaintiff's action. Specifically, Defendants argue neither 28 U.S.C. § 1331 and the Declaratory Judgment Act provide an independent basis for subject matter jurisdiction (Doc. 21, p. 6).

Once jurisdiction has been called into doubt, the party asserting jurisdiction has the burden of proving that this Court has subject matter jurisdiction. *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021). When deciding a facial challenge to jurisdiction, "the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Int'l Ass'n of Heat & Frost Insulators Loc. 17 Pension Fund v. CEC Env't, Inc.*, 530 F. Supp. 3d 757, 760 (N.D. Ill. 2021) (cleaned up). The court may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id*. Thus, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

The Court agrees that the Declaratory Judgment Act and Section 1331 do not provide independent bases to confer jurisdiction. *Manley v. L.*, 889 F.3d 885, 893 (7th Cir. 2018) (citing

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Plaintiff states the Declaratory Judgment Act confers jurisdiction where "federal jurisdiction would exist in a coercive suit brought by the declaratory judgment defendant." (Doc. 24, p. 2). Said differently, the Seventh Circuit states that "jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant." *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008) (quoting *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).). Plaintiff supports its argument by citing *GNB Battery Technologies, Inc.*, where the Seventh Circuit held GNB's complaint constituted an adequate request for declaratory relief and supports federal question jurisdiction because GNB's complaint presumes possibility of action under various sections of the Compensation and Liability Act. *GNB Battery Technologies*, 65 F.3d at 620.

      Essentially, for this Court to have subject matter jurisdiction over an action where Plaintiff requests declaratory relief, this Court must have jurisdiction over the Defendants' 'presumed complaint" against Plaintiff (declaratory judgment defendant). *See e.g. Samuel C. Johnson 1988 Tr. v. Bayfield Cty., Wis.*, 520 F.3d 822, 828 (7th Cir. 2008) (stating "the issue is whether the County's [defendant] presumed complaint against the Landowners [plaintiff], on its face, would include an action 'arising under' federal law."). Plaintiff states "Defendants can file such a suit, and it is not uncommon for them to do so." (Doc. 24, p. 3). Plaintiff cites cases in the Sixth Circuit and District Court of the District of Columbia as examples of civil forfeiture actions of purported illegal firearms. *United States v. One Assortment of Eighty-Nine Firearms and Six Hundred and Thirty-Eight Rounds of Ammunition*, 846 F.2d 24, 26 (6th Cir. 1988) (government filed civil forfeiture of 89 firearms and 38 rounds of ammunition); *United States v. Seven Misc. Firearms*, 503 F. Supp. 565 (Dist. Court, Dist. of Columbia 1980) (court concluding

five firearms seized from the NRA museum were rendered incapable of firing and two were not designed or manufactured to fire and hence not firearms).

While these cases are not in this circuit and deal with many more than one firearm, drawing all reasonable inferences in favor of Plaintiff, the Court sees how a presumed complaint against Plaintiff Roe by the Government in a civil forfeiture case would confer jurisdiction on this Court. 26 U.S.C. § 5872(a). The Court finds there is subject matter jurisdiction.

### b. Standing

Defendants further move to dismiss on the basis that Plaintiff does not have Article III standing (Doc. 6, p. 8). Specifically, Defendants argue Plaintiff does not meet redressability element under Article III. *Id*.

The elements of standing are well settled: the plaintiff must allege an injury in fact that is traceable to the defendant's conduct and redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Specifically, a plaintiff must show "(1) an injury in fact that is (2) caused by the defendant's conduct and (3) redressable by a favorable decision." *Woodring v. Jackson Cnty.*, 986 F.3d 979, 984 (7th Cir. 2021) (citing *Lujan*, 504 U.S. at 560). Thus, Article III of the U.S. Constitution limits a federal court's authority to resolve "cases" or "controversies." U.S. CONST. Art. III. If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). Plaintiff bears the burden of demonstrating concrete or imminent injury. *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 568 (7th Cir. 2021).

Defendants argue that Plaintiff does not meet constitutional standing requirements because the injury Plaintiff asserts "could not be redressed by a favorable decision." *Cornucopia*

*Inst. v. United States Dep't of Agric.*, 884 F.3d 795, 797 (7th Cir. 2018). Plaintiff states this argument is frivolous and likens it to a homeowner having no standing to seek just compensation after a highway is built over his home (Doc. 24, p. 6). In short, Defendants argue the law is settled and this Court has no legal mechanism of redressing Plaintiff's harms. Plaintiff disagrees by arguing the opposite – the law is at issue and the Court should ignore guidance from various circuits, including the Seventh Circuit. The Court agrees that this Court has no legal way to order retroactive registration of the pre-1981 DIAS and no legal way to remedy Plaintiff's inability to sell or legally possess the DIAS. The DIAS is illegal and therefore, contraband. A favorable decision by this Court could not redress Plaintiff's alleged injury.

Plaintiff argues Ruling 81-4 allows Plaintiff to legally possess his DIAS and excludes his pre-1981 DIAS from the reclassification in Ruling 84-1 (Doc. 1 at ¶ 66A). However, Ruling 81-4 did not waive the registration requirements for pre-1981 auto sears; it waived the NFA tax implications for pre-1981 auto sears. *See* Ruling 81-4 (citing 26 U.S.C. § 7805(b))[5]. Reproduced again, Ruling 81-4 holding states, "[w]ith respect to the machinegun classification of the auto sear under the National Firearms Act, *pursuant to 26 U.S.C. 7805(b)*, this ruling will not be applied to auto sears manufactured before November 1, 1981." (emphasis added). The Seventh Circuit provides a helpful analysis of this distinction. The defendants in *Cash* argued Ruling 81-4 places "auto sears manufactured before November 1, 1981 outside all obligations laid by statute on the ownership and transfer of firearms." *United States v. Cash*, 149 F.3d 706, 707 (7th Cir. 1998). The Seventh Circuit disagreed stating, "nothing in the firearms statutes gives the Secretary of the Treasury (or the Bureau of Alcohol, Tobacco and Firearms) the power to make

---

[5] Section 7805(b)(8) provides, "the Secretary may prescribe the extent, if any, to which any ruling (including any judicial decision or any administrative determination other than by regulation) relating to the internal revenue laws shall be applied without retroactive effect." 26 U.S.C. § 7805(b).

exemptions to § 5845(b) [defining machineguns] and associated legal obligations." *Id*. Later, the court stated:

> Read in conjunction with § 7805(b)(8), the proviso in the fourth paragraph of ATF Ruling 81–4 means only that the Secretary will not collect any tax under 26 U.S.C. §§ 5801, 5811, or 5821 on account of auto sears manufactured or transferred before November 1, 1981. *The ruling does not—and cannot—excuse compliance with criminal laws applicable at the time of post–1981 transfers*.

*Cash*, 149 F.3d at 707. (emphasis added).

Plaintiff argues that such language is dicta, and the Seventh Circuit is wrong (Doc. 24, p. 7-9). To support, Plaintiff states that if the government and defendant in *Cash* believed in one reading of Ruling 81-4 and "there was no need to brief it," it must have been correct perception of the law (Doc. 24, p. 9). The Court finds these arguments are without merit and will defer to the language from the Seventh Circuit. While the Court agrees dicta is not inherently controlling, the Court finds analysis of the statute and ruling helpful and persuasive in the absence of other guidance in this circuit.

In 2013, the Sixth Circuit provided additional context of Ruling 84-1. In *United States v. Dodson*, defendant appealed his sentence where he moved to dismiss any counts of his superseding indictment related to auto-sear counts, arguing per Ruling 84-1, pre-1981 auto sears were legal to possess and transfer, without registration. *United States v. Dodson*, 519 F. App'x 344, 346 (6th Cir. 2013). The Sixth Circuit clarified the effect of the Ruling 84-1:

> The effect of the retroactivity of Ruling 81–4, therefore, is that pre–1981 manufacturers are exempt from the $200 making tax, 26 U.S.C. § 5821; pre–1981 sales are exempt from the $200 transfer tax, 26 U.S.C. § 5811; pre–1981 dealers are exempt from the $500 special occupational tax, 26 U.S.C. § 5801; and pre–1981 owners are exempt from criminal prosecution for past possession of an unregistered machinegun, 26 U.S.C. § 5861(d). *But post–1981 transfers and possessions—even of previously manufactured auto sears—must be subject to the tax and registration requirements of the National Firearms Act. Dodson mistakes an exemption limited to past time periods for an absolute exemption for a class of items*.

*Dodson*, 519 F. App'x at 349 (emphasis added).

Thus, the Sixth Circuit stated that while the ATF "may retroactively exempt certain weapons from tax and regulation requirements," the ATF cannot "exempt those same weapons from prospective application of the law." *Id*. at 349. Any other reading of Ruling 81-4 is problematic because, as the Sixth Circuit in *Dodson* recognized, the Court cannot find that a 1981 ATF Ruling exempts the Plaintiff's unregistered DIAS from a 1986 machinegun ban. "ATF does not have the ability to redefine or create exceptions to Congressional statutes, and surely cannot do so before those statutes were passed." *Id*. *See also id.* at fn 4 (stating "Ruling 81–4 is such an interpretation of existing law, issued to facilitate compliance by the public, not create new law").

In line with the Seventh and Sixth Circuit reasoning, interpretation, and analysis, Ruling 84-1 does not allow for retractive registration of Plaintiff's pre-1981 DIAS. Ruling 84-1 did not create an exception for Plaintiff's pre-1981 DIAS.

Plaintiff urges the Court that it has a way to redress Plaintiff's injury. Specifically, Plaintiff urges this Court to see how Defendants have the "legal obligation" under "Constitutional Due Process" and Section 207(d) of the Gun Control Act of 1968 to establish amnesty periods (Doc. 24, p. 6). Section 207(d) provides:

> The Secretary of the Treasury, after publication in the Federal Register of his intention to do so, is authorized to establish such periods of amnesty, not to exceed ninety days in the case of any single period, and immunity from liability during any such period, as the Secretary determines will contribute to the purposes of this title.

Pub. L. 90-619, 82 Stat. 1236.

Plaintiff argues that Defendants have the obligation to "establish amnesty periods, upon publication of notice in the federal register, of up to 90 days, to allow for registration of

unregistered firearms," which "would resolve the issue in this case." (Doc. 24, p. 6). However, courts have held that there is no authority to provide amnesty for machineguns because the purpose of 18 U.S.C. § 922(o),[6] where Congress intended to make it illegal for any person to transfer or possess a machinegun, was to limit transactions in post-1986 machineguns. *United States v. Hunter*, 843 F. Supp. 235, 247 (E.D. Mich. 1994) (stating "it is evident that Congress prohibited the transfer and possession of most post–1986 machineguns not merely to ban these firearms, but, rather, to control their interstate movement by proscribing transfer or possession")[7]; *Doe v. Trump*, No. 19-CV-6-SMY, 2021 WL 4441462, at *3 (S.D. Ill. Sept. 28, 2021); *Farmer v. Higgins*, 907 F.2d 1041 (11th Cir. 1990) (rejecting the district court's holding that § 922(o) did not prohibit private possession of machineguns if the owner complied with the NFA's registration requirements and agreeing with ATF's interpretation that § 922(o) prohibits the private possession of machineguns not lawfully possessed prior to May 19, 1986). This intent is buttressed by Senator Kennedy during the colloquy on the Senate floor:

> MR. METZENBAUM: Do you believe that an amnesty period can be administratively declared by the Secretary of the Treasury by the enactment of this bill?
> MR. KENNEDY. Yes, I am aware of the discussions earlier today on the question of amnesty, and I joined the Senator in rejecting any such proposal. There is nothing in the bill that gives such an authority, and there is clearly no valid law enforcement goal to be achieved by such open-ended amnesty.

132 Cong. Rec. S5358 (Tuesday, May 6, 1986).

---

[6] 922(o) states "(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun. (2) This subsection does not apply with respect to-- (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect." 18 U.S.C. § 922.

[7] Plaintiff also requests for this Court to render Section 922(o) unconstitutional (Doc. 24, p. 13-17). Section 922(o) has already been held constitutional as valid under the Commerce Clause by various circuits in this country. *United States v. Kenney*, 91 F.3d 884 (7th Cir. 1996) ("regulation of machine guns is well within the scope of congressional authority over activities affecting commerce"); *United States v. Wilks*, 58 F.3d 1518 (10th Cir. 1995) ("[t]he interstate flow of machineguns 'not only has a substantial effect on interstate commerce; it is interstate commerce'") (cleaned up); *United States v. Kirk*, 70 F.3d 791 (5th Cir. 1995); *United States v. Rambo*, 74 F.3d 948 (9th Cir. 1996). This Court will not contradict clear precedence.

Considering the extensive judicial authority and clear Congressional intent saying so, the Court agrees Defendants do not have the authority to provide an amnesty period for Plaintiff's DIAS.

Unregistered DIAS such as Plaintiff's are now contraband. *United States v. Tankersley*, 492 F.2d 962, 967 (7th Cir. 1974) ("only transferors can register firearms under the" National Firearms Act); *United States v. Aiken*, 974 F.2d 446, 448 (4th Cir. 1992) (explaining Congress changed the legislative scheme to flatly prohibit possession of an unregistered gun and therefore contraband). This Court has no legal authority to determine Plaintiff's DIAS is now legal and thus cannot redress Plaintiff's harms. The Court finds that the Plaintiff lacks standing and therefore dismisses his Complaint based on the failure to meet a "case" or "controversy" under Article III of the U.S. Constitution.

    c. **APA Final Agency Decision**

Plaintiff's Complaint states that the official position of the ATF changed from Ruling 81-4 where pre-1981 DIAS were legal (which the Court has determined differently above) to 2014 where the ATF stated in an Editor's Note explaining Ruling 81-4 in the Federal Firearms Reference Guide, "possession to transfer of an unregistered drop in auto sear…is prohibited by the…NFA, 26 U.S.C. 5861, and the Gun Control Act, 18 U.S.C. 922(o). U.S. Dep't of Just. ATF, Fed. Firearms Reg. Reference Guide, p. 126-27 (1988); (Doc. 1 at ¶ 56). Such a change in policy, according to Plaintiff, violates notice requirements of the APA. (Doc. 1 at ¶¶ 56-65). Defendants move to dismiss under 12(b)(6) on the basis that Plaintiff cannot be granted relief under the APA because the Editor's Note is not final agency action (Doc. 21, p. 10).

The purpose of a motion to dismiss filed under Rule 12(b)(6) is to decide the adequacy of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In order to

survive a Rule 12(b)(6) motion, the complaint must allege enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When considering a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must accept well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

The APA limits judicial review to "final agency actions." 5 U.S.C. § 704. The Supreme Court has explained that to constitute a final action, the decision at issue "must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and it must "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Menominee Indian Tribe of Wisconsin v. Env't Prot. Agency*, 947 F.3d 1065, 1070 (7th Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

In *Menominee Indian Tribe of Wisconsin*, the Seventh Circuit held detailed letters from the Environmental Protective Agency and Army Corps of Engineers to an Indian tribe explaining that the state government (and not federal) had jurisdiction over mining company's application for permits submitted pursuant to the Clean Water Act did not constitute "final agency actions." *Menominee Indian Tribe of Wisconsin*, 947 F.3d at 1070. Specifically, the Seventh Circuit found such letters were "purely informational in nature" because it "impose[s] no obligations and "denie[s] no relief. *Id*. Additionally, the Court found that the letters "reiterated the status quo" and thus, there was nothing for the district court and Seventh Circuit to review. *Id*.

If the Seventh Circuit does not constitute these letters as "final agency" action, the Court does not see how the editor's note in the Federal Firearms Reference Guide can constitute a

"final agency" action. The Editor's Note is informational in nature and imposed no obligations on gunowners. Additionally, the Court is unclear how legal consequences were to follow from this note regarding Ruling 84-1. While the Seventh Circuit understood the tribe would find its conclusion "unsettling" since the tribe relied on such "detailed and specific" letters to its detriment, the Court does not find these same concerns present here; especially since Plaintiff allegedly forgot about his DIAS until finding them in 2020. The Court does not agree with Plaintiff's allegation that such a "change" in interpretation regarding DIAS is Orwellian (Doc. 24, p. 18) (citing the Animal Farm's original and Napoleon's changed commandments).

In fact, there are jurisdictions across the circuits that have stated or inferred that even *rulings* of the ATF are considered interpretations of existing law, used to facilitate compliance in the form of informal rulemakings, and not subject to the notice and hearing requirements of the APA. *York v. Sec'y of Treasury*, 774 F.2d 417, 419–20 (10th Cir. 1985) (ATF ruling merely interpretative rule); *see also United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 420 (6th Cir. 2006) (declining to answer question of what deference is due to ATF rulings).

Additionally, this Court has found that Ruling 81-4 does not hold that Plaintiff is legally allowed to possess his DIAS. Thus, Ruling 81-4, the Editor's Note, Seventh Circuit, and other courts have the same understanding that possessors could not legally own pre-1981 DIAS, and Ruling 81-4 excluded pre-1981 DIAS from reclassification. In short, all interpret or clearly state pre-1981 DIAS are contraband. Similar to the *Menominee Indian Tribe of Wisconsin* court, this Court believes the Editor's Note "reiterated the status quo" and thus, there is nothing for this Court to review under the APA.

Defendants also move to dismiss Plaintiff's APA claim based on the fact Plaintiff did not file its claim within the required six years. 28 U.S.C. § 2401(a). (Doc. 21, p. 14). Plaintiff argues

the problem is a "continuing one" and finds the different notices confusing (Doc. 24, p. 20). Finding that the Editor's Note is not an "final agency" action, the Court finds this argument moot.

The Court GRANTS Defendants' Motion to Dismiss Plaintiff's claim under the APA.

V.     **Conclusion**

Finding that the Plaintiff has no Article III standing to pursue this case, the Court hereby GRANTS Defendants' Motion to Dismiss (Doc. 21) and DISMISSES Plaintiff's Complaint (Doc. 1). Further, the Court dismisses Plaintiff's claim under the Administrative Procedure Act.

**IT IS SO ORDERED.**
**Dated: January 12, 2022**

                                                      **/s/ J. Phil Gilbert**
                                                      **J. PHIL GILBERT**
                                                      **DISTRICT JUDGE**